**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Hardy Industrial Technologies, LLC,** | ) | **CASE NO. 1:12 CV 3097** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **BJB LLC d/b/a Agri Trading** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

This matter is before the Court upon Hardy Industrial Technologies, LLC's Motion to Vacate, Modify, or Correct Arbitration Award (Doc. 20). This is a breach of contract action. For the reasons that follow, the motion is DENIED.

## FACTS

The facts giving rise to this dispute are discussed in detail in the Court's orders of March 25, 2013, and June 20, 2013, compelling arbitration. Familiarity with those orders is assumed. The Court will briefly summarize the relevant procedural and factual background here.

The parties are engaged in the business of buying and selling animal fats and oils. From time to time, Defendant BJB LLC dba Agri Trading ("Agri Trading") purchased vegetable oils

from Plaintiff Hardy Industrial Technologies, Inc. ("Hardy") and furnished rail tank cars to Hardy for shipment from Hardy's Painesville, Ohio, facility. Sunbelt Commodities, Inc. ("Sunbelt") acted as a broker during these transactions.

The dispute between the parties involves two purchase orders, 319298 (Sunbelt Confirmation 120004) and 319527 (Sunbelt Confirmation 120016), covering the purchase and sale of corn oil. On November 20, 2012, Agri Trading submitted a demand for arbitration to the American Arbitration Association (AAA) regarding these two purchase orders. Thereafter, Hardy filed its Complaint for Injunctive Relief and Declaratory Judgment against Agri Trading in this Court.

Hardy moved to stay the arbitration. Initially, in ruling on Hardy's motion to stay, the Court determined that the arbitration provision was enforceable with respect to Sunbelt Confirmation 120004 but not 120016. With respect to Confirmation 120016, the parties had submitted evidence of two different versions of the purchase order purportedly governing the same transaction. The two documents contained identical dates and purchase order numbers, yet identified different quantities of corn oil to be delivered. No party explained the discrepancy and, based on the parties' submissions, the Court could not say that an agreement to arbitrate existed. On a motion for reconsideration, Agri Trading provided evidence explaining the discrepancy, and the Court ultimately found that the parties had reached an agreement to arbitrate Sunbelt Confirmation 120016 as well.

In determining that the parties had agreed to arbitrate, the Court noted that both purchase orders contained language incorporating the American Fats and Oils Association, Inc.'s

("AFOA") trade rules.[1] The Court found that, by incorporating the AFOA trade rules, the parties had agreed to arbitrate disputes arising under the purchase orders because Rule 3 of the AFOA's trade rules provide that "[a]ll disputes and controversies arising under these rules, which pertain to imported and domestic vegetable oils, shall be settled by arbitration." (ECF 14, at 15).

According to the AFOA Arbitration Rules, members of an AFOA arbitration panel "shall be members of AFOA, or employees of companies who are represented in AFOA by other employees who are members." (ECF 20-7, at 948). The AFOA designates arbitrators as "buyer, seller, or other," and panels of arbitrators are comprised of one of each. (*Id.* at 950). To select the three-member panel, the AAA sends each party to the dispute three identical lists containing three names of buyers' arbitrators, three names of seller's arbitrators', and five names of persons designated as "other." The parties may then strike names that they object to and are to number the remaining names in order of preference mfro each list. "If the parties fail to agree on any of the persons named...or if for any other reason the appointment cannot be made from the submitted lists, the AAA shall have the power to make the appointment of one arbitrator from each category, from among other members of the AFOA Roster without the submission of additional lists." (*Id.* at 951).

Per the Arbitration Rules, the AAA sent the parties an initial list of potential arbitrators on August 23, 2013. On August 26, 2013, Stephen Borstad, president of Agri Trading, sent an email to the AAA disclosing that he had communicated with AFOA administrator Leigh Faircloth regarding the list:

I just was in contact with the AFOA administrator (Leigh Faircloth) who

---

[1] Agri Trading is a member of the AFOA, but Hardy is not.

3

>confirmed the list of potential arbitrators is not the updated list. AAA will be notified today of the correct list (ex: one of the names on the list you have is retired).

(ECF No. 20-3, at 417). On September 9, the AAA informed the parties that it was in the process of updating the AFOA arbitrator list. Hardy states that thereafter, the AFOA held a board meeting where it updated the list of potential AFOA arbitrators and that "Borstad was aware and/or involved in this process."[2]

On November 14, 2013, the AAA issued a revised list of potential arbitrators. Hardy challenged the entire list as biased. On December 20, 2013, the AAA struck the list of potential arbitrators, stating:

>We note that the parties have exchanged copies of the foregoing correspondence. After careful consideration of the parties' submissions, the Association has determined to proceed with administrative appointment of a Panel of arbitrators pursuant to the American Fats and Oils Association Arbitration Rules. These arbitrators will not be selected from among those provided in the previous list. We will notify the parties of the appointed neutrals when this process is complete.

(ECF 20-2, at 418). It then appointed the three arbitrators that Hardy now challenges, Mark Hingiss, John Healy, and Rob Jones.

In completing their disclosures, the three arbitrators noted that they had attended AFOA

---

[2] Hardy does not provide any citation to the record in support of this statement. On its own review, the Court located the following notation in the minutes of the AFOA's October 10, 2013, meeting:

>Chairman Scott Bunz reported that the American Arbitration Association ("AAA") had requested additional information from current board members as it is struggling to provide a sizeable list of candidates from which arbitrating parties may choose. Forms were distributed for completion and return and Board members were asked to set forth their status as buyer, seller, or other.

(ECF 20-18, at 1140).

4

board meetings with Borstad and social events in conjunction with the meetings. Each stated that they had no personal, professional, or financial relationship with Agri Trading or Borstad beyond membership on the board. Hingiss also disclosed that he was a co-broker on one account with a potential third-party witness, David Haselschwerdt, President of Sunbelt.

The parties proceeded to arbitration. On June 23, 2016, a three-member panel of the AFOA Arbitration Tribunal issued its award. It found that both Sunbelt Confirmation 120004 and 120016 were valid contracts. It ruled in favor of Agri Trading, awarding it a total of $1,280,064 in damages and $146,568 in attorney's fees. Hardy now seeks to vacate that award. Agri Trading opposes Hardy's motion and asks the Court to confirm the arbitration award.[3]

**STANDARD**

This matter is governed by the Federal Arbitration Act ("FAA"). The FAA has a strong presumption in favor of confirming an arbitration award, so a court's review of an arbitrator's decision is exceedingly narrow, "one of the narrowest standards of judicial review in all of American jurisprudence." *UHL v. Komatsu Forklift Co.*, 512 F.3d 294, 305 (6th Cir. 2008) (quoting *Lottimer-Stevens Co. v. United Steelworkers*, 913 F.2d 1166, 1169 (6th Cir. 1990)). "Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept....[A]s long as the arbitrator is even arguably construing or

---

[3] Hardy's initial brief did not comply with Local Rule 7.1(F) because it exceeded 20 pages, and Hardy did not seek prior approval for the excess length. Agri Trading asks that the Court strike the brief as a sanction. In its reply brief, Hardy acknowledged that it did not comply with Rule 7.1 and limited its reply to seven pages as a result. While the Court is disturbed that Hardy failed to follow the rules of this district, it declines to issue the severe sanction of striking Hardy's initial brief.

applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union, AFL CIO v. Misco, Inc.*, 484 U.S. 29, 37-38 (1987).

Under the FAA, once an arbitration award is made, any party to the arbitration may move to confirm the award. 9 U.S.C. § 9. The court "must grant the motion unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11." *Id.* These two sections provide the "exclusive regime[]" for federal court review of an arbitrator's award. *Grain v. Trinity Health, Mercy Health Servs. Inc.*, 551 F.3d 374, 378 (6th Cir. 2008) (quoting *Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576 (2008). A court may only vacate an arbitration award in the following instances:

> (1) where the award was procured by corruption, fraud, or other means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Additionally, an arbitral award may be vacated when an arbitrator acts with "manifest disregard of the law." *Barrick Enter., Inc. v. Crescent Petroleum, Inc.*, 496 F. App'x 614, 616 (6th Cir. 2012) (citations omitted). The Sixth Circuit has "emphasized that manifest disregard of the law is a very narrow standard of review." *Id.* (quoting *Merrill Lynch, Pierce, Fenner & Smith v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995). "A mere error in interpretation or application of the law is insufficient. Rather, the decision must fly in the face of clearly

6

established legal precedent." *Id.* (internal citation omitted).

### ANALYSIS

#### A. Agreement to arbitrate Sunbelt Confirmation 120016

Hardy first argues that the Court should revisit its decision that the parties agreed to arbitrate Sunbelt Confirmation 120016. In support, it notes that the copy of Sunbelt Confirmation 120016 that Haselschwerdt produced during arbitration has handwritten annotations and includes a signature whereas the copy that Haselschwerdt produced to this Court in support of Agri Trading's motion for reconsideration does not.

Under the "law of the case" doctrine, a court may not reconsider an identical issue decided at an earlier stage of the litigation except in very limited circumstances. *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997) (citing *Coal Resources, Inc. v. Gulf and W. Indus., Inc.*, 865 F.2d 761, 766-67 (6th Cir. 1989). The Sixth Circuit has stated that an earlier ruling may be reconsidered: (1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice. *Id.* (citations omitted). Only the first of these reasons is applicable here. Hardy, however, has failed to submit "substantially different evidence" than that submitted to the Court on Agri Trading's motion for reconsideration. Specifically, the terms stated on both versions of Sunbelt Confirmation 120016 now at issue are identical. It was on the basis of these terms and the affidavits of Haselschwerdt and Borstad that the Court granted Agri Trading's motion for reconsideration and determined that the parties had agreed to arbitrate. Hardy has failed to show how the immaterial differences in the two confirmations prove that Haselschwerdt submitted false or misleading evidence to this

Court such that it should reconsider its earlier decision. Moreover, as Agri Trading points out, Hardy was aware of the annotations on the revised confirmation during arbitration yet continued to participate in the proceedings without raising its argument that the annotations somehow prove that Agri Trading produced false documents to this Court. "[A] party may not sit idle through an arbitration procedure and then collaterally attack the procedure on grounds not raised before the arbitrators when the result turns out to be adverse." *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 674 (5th Cir. 2002).

### B. Evident partiality

Hardy next argues that the Court must vacate the award because the arbitrators were biased in favor of Agri Trading. As noted above, Agri Trading is a member of the AFOA but Hardy is not. In support of its bias argument, Hardy notes that Borstad attended AFOA meetings with the arbitrators, worked on AFOA committee meetings with them, served on the AFOA Board of Directors with them, and socialized with the arbitrators. Borstad also received status reports of the Hardy/Agri Trading arbitration at AFOA meetings, and Hardy claims that Borstad had ex parte communications with the AFOA about the potential arbitrator list. Hardy believes that AFOA Board Members and Officers have "economically entangled relationships with each other" and aligned business interests because the AFOA states on its website that its members "work to improve trade relations in the fats and oils industry around the world."

The Sixth Circuit's test for "evident partiality" under 9 U.S.C. § 10(a) requires the party challenging the arbitration award to prove that "a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 645 (6th Cir. 2005). The standard requires more than an appearance of bias,

but less than actual bias. *The Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 329 (6th Cir. 1998). "The alleged partiality must be direct, definite, and capable of demonstration, and 'the party asserting [it] ... must establish specific facts that indicate improper motives on the part of the arbitrator.'" *Id.*

Courts have consistently rejected the argument that a panel of arbitrators is biased merely because they are members of the same industry, or even the same trade association, as one of the parties. As the Sixth Circuit has noted, "the party seeking invalidation must demonstrate more than an institutional predisposition toward the other side; a lesser showing would be tantamount to an 'appearance of bias' standard." *Id.* Indeed, "industry arbitration...often uses panels composed of industry insiders, the better to understand the trade's norms of doing business and the consequences of proposed lines of decision." *Nationwide*, 429 F.3d at 646 (internal quotations omitted). "[T]o disqualify any arbitrator who had professional dealings with one of the parties (to say nothing of a social acquaintanceship) would make it impossible, in some circumstances, to find a qualified arbitrator at all." *Morelite Construction Corp. v. New York City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d Cir. 1984) (cited with approval in *Nationwide*, 429 F.3d at 647).

For example, in *The Andersons*, the Sixth Circuit affirmed the district court's finding that the defendant had failed to prove evident bias where an arbitration panel was composed of members of the National Grain & Feed Association ("NGFA"), a trade association that the plaintiff was a member of but the defendant was not. Although the purpose of the NGFA was to protect its members in the marketplace, the Sixth Circuit nevertheless held that there was "no reasonable impression that the NGFA arbitration system itself is evidently partial." *The*

*Andersons*, 166 F.3d at 329. In reaching its holding, the court noted that the association was comprised of a wide variety of businesses, the NGFA arbitration rules specifically required that arbitrators be selected from membership with a view toward selecting arbitrators experienced in the type of trade involved in the case before it, and the arbitrators had to be commercially disinterested in the particular matter before them. *Id.* The court also rejected the defendant's argument that one of the arbitrators was biased because he had served on an NGFA committee with an employee of the plaintiff and its argument that the panel was biased because it awarded all of the relief that the plaintiff had requested. *Id.* ("An adverse award in and of itself is no evidence of bias absent some evidence of improper motivation.").

Hardy has failed to submit any evidence of evident partiality on behalf of the arbitrators in this case. Rather, its claim is one of institutional bias, which, at best, establishes an appearance of bias. Under *The Andersons*, being members of the same trade organization and serving on the same committees are insufficient to support a claim of bias, even where the purpose of the organization is to protect its members in the marketplace. Hardy has submitted no evidence of the "economic entanglement" that it claims. The arbitrators' disclosures show that they had no professional relationship with Agri Trading and no financial interest in the arbitration. Hingiss's connection to Haselschwerdt, a third-party witness, is insufficient to show that he acted out of improper motives, particularly where Haselschwerdt has also acted as Hardy's broker.[4] Moreover, the AFOA's arbitration rule requiring that three-member panels be comprised of one arbitrator designated as a buyer, one as a seller, and one as other, undermines Hardy's claim that the arbitrators were necessarily biased in favor of Agri Trading. Finally, Hardy's claim that the

---

[4] Hardy asserts that Haselschwerdt had a $93,000 interest in the arbitration.

10

AAA struck the revised list of potential arbitrators because they were biased–one of its primary arguments–misconstrues the record. Nothing in the AAA's letter striking the panel states that it did so because the panel was biased. Rather, the letter simply states that the AAA was following the AFOA's rules, which gives the AAA the authority to establish the panel itself when the parties have failed to agree on any of the potential arbitrators identified in the revised list.

Thus, Hardy has failed to produce specific facts that indicate improper motives on the part of the arbitrators. Evident partiality, therefore, is not a basis for vacating the award.[5]

C. Ex Parte communications

Hardy claims that Borstad's ex parte communications with the AFOA regarding the list of potential arbitrators tainted the proceeding and requires vacatur. The FAA does not expressly prohibit ex parte contact, and most courts that have addressed the issue have found that "ex parte conduct ... requires vacatur of an award *only* if the ex parte contact constitutes misbehavior that prejudices the rights of a party." *U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*, 591 F.3d 1167, 1176 (9th Cir. 2010) (citing *Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union AFL–CIO, CLC, Local 182B v. Excelsior Foundry Co.,* 56 F.3d 844, 846 (7th Cir.1995) ("An ex parte conduct is not an automatic ground for invalidating" an arbitration award.)); *see also Kennecott*

---

[5] Hardy submits what it purports to be a photograph of arbitrators Jones and Healy not paying attention to the proceedings as evidence of the arbitrators' bias. Hardy's decision to submit this photograph is questionable. Hardy has not authenticated the photo and has provided no evidence of whether the photograph was taken during the proceedings or during a break. The photo is extremely unclear and does not support Hardy's contention that Healy is "either sleeping or looking at his phone"–it is impossible to tell what Healy is doing from the grainy picture. Similarly, it is impossible to tell from the photo that Jones is not paying attention simply because he is looking out the window. Finally, as Agri Trading notes, a transcript of the hearing was made in real time and provided to the arbitrators before they made their decision.

*Utah Copper Corp. v. Becker*, 186 F.3d 1261, 1271 (10th Cir. 1999) (holding that a showing of prejudice is required); *M & A Elec. Power Co op. v. Local Union No. 702,* 977 F.2d 1235, 1238 (8th Cir. 1992) ("the party seeking a vacation of an award on the basis of ex parte conduct must demonstrate that the conduct influenced the outcome of the arbitration").

Hardy provides no evidentiary support for its claim that the revised list of potential arbitrators "was a direct product of Mr. Borstad's *ex parte* communications with the AFOA." Nor does it produce any evidence that the AAA's list of potential arbitrators was not developed in accordance with the AFOA's arbitration rules. (*See* ECF No. 20-7, at 948) ("The AAA shall, at all times, keep a current list of the names of persons available to serve as arbitrators under these Rules as provided by the AFOA. The AFOA maintains sole responsibility and control over the AFOA panel."). Moreover, Borstad apprised the AAA of his contact with the AFOA administrator, and the AAA in turn apprised Hardy of the contact during the arbitration process. In short, Hardy has not shown that Borstad's ex parte communications with the AFOA–whatever they may have been–somehow influenced the outcome of the arbitration or prejudiced Hardy in any manner.

D.  Refusal to hear evidence

Plaintiff next argues that the arbitration award should be vacated because the arbitrators refused to hear material evidence. Specifically, Hardy claims that the arbitrators did not allow it to take Haselschwerdt's deposition, examine Haselschwerdt's hard drive, present rebuttal evidence against Agri Trading's post-hearing submission of damage calculations, and present rebuttal evidence against Agri Trading's post-hearing submission of attorneys' fees calculations.

An arbitration award may be vacated "where the arbitrators were guilty of misconduct in

refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C.§ 10(a)(3). Because "[a]rbitrators are not bound by formal rules of procedure and evidence," the question under Section 10(a)(3) is simply "whether a party to arbitration has been denied a fundamentally fair hearing." *National Post Office Mailhandlers v. United States Postal Serv.*, 751 F.2d 834, 841 (6th Cir. 1985). "Fundamental fairness requires only notice, an opportunity to present relevant and material evidence and arguments to the arbitrators, and an absence of bias on the part of the arbitrators." *Louisiana D. Brown 1992 Irrevocable Trust v. Peabody Coal Co.*, No. 99-3322, 2000 WL 178554, at * 6 (6th Cir. Feb. 8, 2000). When a party agrees to arbitrate, it "'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" *Id.* (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991)). Thus, arbitration may proceed with restricted inquiry into factual issues. *Id.*

The arbitrators were not guilty of misconduct in refusing to order Haselschwerdt's deposition or the examination of his hard drive regarding Sunbelt Confirmation 120016. Hardy cites no case from this circuit that would support the proposition that the arbitrators had the authority to compel Haselschwerdt for deposition. The circuits are split on the issue of whether Section 7 of the FAA gives an arbitrator the authority to subpoena a third party for a discovery deposition, and the Sixth Circuit has not taken a side in the split. *Life Receivables Trust v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 215 (2d Cir. 2008) (noting circuit split); *Am. Fed'n of Television & Radio Artists, AFL CIO v. WJBK TV (New World Commc'ns of Detroit, Inc.)*, 164 F.3d 1004, 1009 n.7 (6th Cir. 1999) ("We do not reach the question of whether an

arbitrator may subpoena a third party for a discovery deposition relating to a pending arbitration proceeding."). Nor does Hardy cite any case–from this circuit or otherwise–holding that Section 7 gives an arbitrator the authority to compel a non-party to produce a hard drive for examination. Moreover, Haselschwerdt produced documents from his files and Hardy had an opportunity to extensively cross examine him during the arbitration. Thus, Hardy cannot show that it was prejudiced by the arbitrators' decision.

The arbitrators also were not guilty of misconduct in refusing to strike Agri Trading's post-hearing submission of its damage and attorney fee calculations or to reopen the proceedings to allow Hardy to cross examine Agri Trading on these matters. Hardy fails to show how it was prejudiced by the arbitrators' decision to follow the agreed-upon post-hearing schedule. Instead, it simply states in one conclusory sentence that the decision "was prejudicial." (ECF 20, at 22). Moreover, Hardy had an opportunity to respond to Agri Trading's submissions through briefs and letters to the arbitrators. With respect to attorneys' fees, Hardy also submitted the affidavit of Michael Cohan. In assessing attorneys' fees, the arbitrators ultimately reduced Agri Trading's request from $293,495 to $146,568; thus, they apparently considered Hardy's post-hearing submissions. *See Louisiana D. Brown 1992 Irrevocable Trust*, 2000 WL 178554, at * 6 (refusing to vacate award on basis of arbitrators' refusal to hear evidence because plaintiff had an opportunity to present its claims, including its vigorous argument that additional discovery should be permitted and why it would be relevant, and the panel permitted supplemental briefs and documents to be filed before rendering its decision).

E. Manifest disregard of the law–damage award[6]

Hardy next argues that the arbitrators "manifestly disregarded Ohio law and the evidence in the record and branded their own notions of justice upon the parties." As support, Hardy claims that the arbitrators failed to follow Ohio law on course of dealing and a number of AFOA trade rules and that Agri Trading's damage calculations contained errors. To prove that the arbitrators manifestly disregarded the law, Hardy must show that the arbitrators' decision "fl[ies] in the face of clearly established legal precedent." *Barrick Enter., Inc. v. Crescent Petroleum, Inc.*, 496 F. App'x 614, 616 (6th Cir. 2012). "A mere error in interpretation or application of the law is insufficient." *Id.* (internal citation omitted).

The Sixth Circuit has said "time and again, the absence of a reasoned award makes it all but impossible to determine whether the arbitration panel acted in manifest disregard of the law." *Murray v. Citigroup Glob. Markets, Inc.*, 511 F. App'x 453, 455–56 (6th Cir. 2013) (citing *Elec. Data Sys. Corp. v. Donelson,* 473 F.3d 684, 691 (6th Cir.2007); *Dawahare,* 210 F.3d at 670; *Jaros,* 70 F.3d at 421). The Sixth Circuit has noted that it will not vacate an award for failure to provide such an explanation and admonishes parties to "clearly state in the agreement the degree of specificity required" if they wish for a detailed opinion at the end of the arbitration. *Id.* (quoting *Green v. Ameritech Corp.*, 200 F.3d 967, 976 (6th Cir. 2000).

The AFOA arbitration rules provide that "[t]he arbitrator need not render a reasoned award unless the parties request such an award in writing prior to appointment of the arbitrator or unless the arbitrator determines that a reasoned award is appropriate." (ECF 20-7, at 958). Here,

---

[6] To the extent that Hardy relies on 9 U.S.C. § 10(a)(4) (an award may be vacated "where the arbitrators exceed[] their powers"), its argument fails for the reasons stated in this subsection.

15

Hardy does not state that it asked for a reasoned award. Aside from stating that the contracts were valid, that Agri Trading had suffered market losses on the unshipped cars, and that the parties had both poorly executed the AFOA trade rules, the arbitrators did not explain their decision. As the Sixth Circuit has recognized, it is, thus, virtually impossible to determine whether the arbitrators acted in manifest disregard of the law. Hardy's request to vacate the award on this basis essentially asks the Court to relitigate the factual determinations made by the arbitration panel. This the Court may not do.

Moreover, because the parties agreed to have their disputes settled by an arbitrator, "it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept....[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union, AFL CIO v. Misco, Inc.*, 484 U.S. 29, 37-38 (1987). As the Sixth Circuit has held, an award only fails to "draw its essence from the agreement" when: "(1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on "general considerations of fairness and equity" instead of the exact terms of the agreement." *The Beacon J. Pub. Co. v. The Akron Newspaper Guild, Local no. 7*, 114 F.3d 596, 600 (6th Cir. 1997) (citations omitted). Here, the arbitrators found that a contract existed between the parties for the terms identified in Sunbelt Confirmation 120004 and 120016. Thus, the award clearly draws its essence from the agreement because it is based on the precise terms of the parties' agreement, does not impose any additional requirements, is rationally supported by the agreement, and is not

based on general considerations of fairness and equity.

The award also makes clear that the arbitrators considered the AFOA trade rules at issue in rendering their decision–the panel stated that both parties had "poorly executed" the rules. Despite the poor execution of the rules, the panel still found that the parties had reached a valid agreement.[7] Finally, the fact that Agri Trading could not show its damages in an exact amount does not doom the award. "It has long been recognized that once the fact of damage has been properly shown, 'uncertainty as to the[] amount will not foreclose recovery.'" *McKay v. Dudley*, No. 92-6299, 1994 WL 478716, at *4 (6th Cir. 1994) (internal quotations omitted). Moreover, the panel must have taken Hardy's various arguments regarding the trade rules and Agri Trading's damage calculations into account because it awarded Agri Trading substantially less than its damage request.

In short, the Court will not substitute its judgment for that of the arbitrators.

F. Manifest disregard of the law - attorneys' fees

Hardy lastly argues that the arbitrators' award of attorneys fees was in manifest disregard

---

[7] Hardy claims that arbitrator Jones "imposed his own brand of justice" because he stated during the proceedings that it was his interpretation "as a board member of American Fats and Oils Association...the day the fire happened, that's when force majeure takes into effect. That would be my interpretation of it." (ECF 20, at 396). This isolated statement, which occurred during the proceeding and does not appear in the arbitrators' decision, is insufficient to show that the arbitration panel acted in manifest disregard of the law. *Cf. Antietam Indus. v. Morgan Keegan & Co.*, No. 6:12-cv-1250, 2013 WL 1213059, at * 5 (M.D. Fla. Mar. 25, 2013) (finding that arbitrator's predisposition on issue of law not a basis for vacatur under 9 U.S.C. § 10(a)(2)).

of Ohio law because they issued the award without sufficient evidence.[8] Under Ohio law, an "award of attorney fees is to be a reasonable amount determined by the trial court upon presentation of sworn evidence." *Pyle v. Pyle*, 11 Ohio Ct. App. 3d 31, 35 (8th Dist. 1983). The determination of what evidence will be heard by the trial court is left to the discretion of the trial court itself. *R.C.H. Co. v. 3 J Machining Serv., Inc.*, 2004 WL 35777, at * 3 (Ohio Ct. App. 8th Dist. Jan. 8, 2004). The evidence may take the form of testimony, affidavits, answers or other forms of sworn evidence, and as long as it allows the trial court to reach a reasonable fee award, the award cannot be disturbed absent an abuse of discretion. *Id.* As the Ohio Supreme Court has recognized, "[t]he trial judge which participated not only in the trial but also in many of the preliminary proceedings leading up to the trial has an infinitely better opportunity to determine the value of services rendered by lawyers who have tried a case before him than does an appellate court." *Bittner v. Tri Cty. Toyota, Inc.*, 58 Ohio St. 3d 143, 146, 569 N.E.2d 464, 467 (1991). Therefore, "[u]nless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere." *Id.*

Here, Agri Trading submitted the declaration of Alan Weigel, one of Agri Trading's attorneys, in support of its fee request. As noted above, Hardy had an opportunity to submit a competing affidavit from Michael Cohan, who contested the reasonableness of Agri Trading's request. Moreover, as *Bittner* recognizes, the arbitrators are in a far better position than this Court to determine the value of the services rendered by Agri Trading, having been the ones to

---

[8]     The AFOA arbitration rules state that the arbitrators may award attorneys' fees "if all parties have requested such an award." (ECF 20-7, at 958). Hardy does not argue that the arbitrators were without any authority to award fees; it argues only that the award was in manifest disregard of the law because Agri Trading did not provide sufficient evidentiary support for its request.

18

participate in the arbitration proceedings. After reviewing the parties' submissions, the arbitrators awarded Agri Trading $146,568 in attorneys' fees, roughly half of what it had requested. The Court cannot say that the fee award is so high as to shock the conscience. As a result, it will not vacate the award.

**CONCLUSION**

For the foregoing reasons, Hardy Industrial Technologies, LLC's Motion to Vacate, Modify, or Correct Arbitration Award (Doc. 20) is DENIED. The arbitrators' award is hereby confirmed. Agri Trading's request for attorneys' fees in responding to Hardy's motion is DENIED. Hardy had an objectively reasonable basis for filing its motion.

IT IS SO ORDERED.

                                                    /s/ Patricia A. Gaughan
                                                  PATRICIA A. GAUGHAN
                                                  United States District Judge

Dated: 12/16/16